BANCO TERRITORIAL Y AGRÍCOLA, Plaintiff and Appellee, *v.* ULISES A. MARTÍNEZ, Defendant and Appellant.

No. 3486.. Argued March 11, 1925.—Decided March 11, 1926.

*José C. Rivera* for the appellant. *Joaquín Vendrell* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff brought suit to recover the amount of several overdrafts and, in addition to details of presentation and payment by a branch bank in Guayama, alleged:

"VII. That check No. 88361, as well as No. 30751, which are mentioned in the third and fifth averments of this complaint, were sent by the Guayama branch of the plaintiff banking institution to the Caguas branch so that they might be charged to the account of defendant in the Caguas bank, and with the instruction that they be credited on the account of the branch where they were paid, as it appears from the endorsements.

"VIII. That on the date that the checks above referred to were received by the Caguas branch, the account of defendant Ulises A. Martínez did not show a balance sufficient to cover the total amount of the checks; and this branch was obliged to request defendant to deposit sufficient funds to meet the total amount of said checks at the earliest possible moment.

"IX. And plaintiff alleges that defendant asked the manager of the Caguas branch to credit the account of the Guayama branch with the amount of said checks, which had been forwarded by the

Guayama branch with the instructions above mentioned, in considera-tion of defendant's promise to deposit in due time the necessary funds to cover the amount of the checks.

"X. That the Caguas branch, in view of the fact that at that time defendant enjoyed a good reputation, and in order not to prejudice his credit, credited to the account of the Guayama branch $4,100.00, total amount of the checks; and notwithstanding the time that has elapsed between the date on which those checks were received by the Caguas branch and the date of the filing of this complaint, defendant has not paid said amount, nor has he made any effort to provide for such payment, notwithstanding the innumerable demands that have been made upon him to that effect."

From the answer we take the following extract:

"III. Defendant has no information nor belief as to the facts contained in the seventh averment of the complaint, and therefore denies the same.

"IV. Defendant impugns and denies generally and specifically, one by one, all the facts alleged in the ninth averment of the complaint.

"V. Likewise, defendant totally impugns and denies the tenth averment of the complaint, generally and specifically.

"NEW MATTER IN OPPOSITION TO THE COMPLAINT.

"Defendant, furthermore, as new matter in opposition to the complaint, sets up the following defenses:

"First: That defendant was never obligated, primarily or directly, to reimburse the amount of the checks to plaintiff, for that was incumbent upon the endorsees thereof, in the order in which they appear as such from the documents in question, and it is for this reason that plaintiff should have proceeded first against them, unless plaintiff intended to accept the responsibility of its non-action against those parties directly bound to reimburse the amount of said checks; and

"That, besides, at the time when the checks were received by the Caguas branch, although the balance to defendant's account was only $400.00, more or less, the fact is that defendant had deposited in the bank, as collateral security for his personal account, more than fifteen promissory notes in his favor which amounted to a total of more than $3,428.30, wherefore it is impossible even to suppose that the bank had any motive to demand that defendant should make additional deposits at that time, especially when said collateral security had been accepted as entirely satisfactory by the bank on all occasions.

"Second: And defendant especially alleges and maintains that plaintiff never applied to the account of defendant any amount in compensation of the amount represented by the collateral securities which were in ·its possession and subject to its ·disposal, which! securities sometimes amounted to over six thousand dollars, in various notes in favor of defendant, and endorsed in blank, notwithstanding the fact that plaintiff had treated such documents as securities on hand, for the purpose of meeting the emergencies in the current account of defendant; and with which securities on deposit it always endeavored to compensate the overdrafts that might occur upon defendant's current account; and

"That it is impossible to imagine how plaintiff could treat defendant with so much consideration, in order to avoid injury to his credit and reputation at the time the Caguas branch received the checks for the reason that at the same ,time, to the great prejudice of defendant, plaintiff returned other checks without the slightest respect or consideration, although it is true that the endorsees of the checks so returned had less credit and standing than the endorsees of the checks which have given rise to the present action."

At the close of the evidence for plaintiff the following incident occurred:

"Mr. J. C. Rivera: Your Honor, in order to save time, I want to make a motion and submit it to the consideration of the court, as a legal question, and without argument. I could and can present several defenses, but I should like to interpose only one, and I believe that my brother will not object to that, subject to such decision as may be reached after hearing my evidence. The defense is that defendant has never been obligated to reimburse to plaintiff the amount of those checks.

"Mr. Vendrell: As a legal question, yes, Sir; all right.

"Mr. J. C. Rivera: So that all the other defenses may be deemed to have been withdrawn. The defendant will take the stand."

The only witness for defendant was the defendant himself who insisted that he had never been notified of the particular overdraft in question or of any others subsequently to certain specified dates. But defendant admitted that notice of previous overdrafts had been given and that he had received a statement of his account wherein the checks described in

the complaint had been charged to his account as having been paid by the bank.

In the court below the case was submitted by briefs and the principal, if not the only, contention of defendant seems to have been that the bank was obliged to proceed first against the endorsers.

On appeal, however, this theory seems to have been practically abandoned and defendant now relies upon the proposition that a bank has no remedy whatever for losses sustained through payment, inadvertent or otherwise, of overdrafts.

The brief for appellant contains no separate assignment of errors and some 7 or 8 pages of the so-called statement of the case are devoted to a discussion of the demurrer for want of facts sufficient to constitute a cause of action, which was overruled by the court below.

This is followed by a number of specifications scattered throughout the course of the argument going to alleged errors in the admission of evidence and in the overruling of a motion to strike one or two insignificant questions and answers. None of these matters as presented and submitted would have demanded serious consideration, even though they had been separately assigned.

Next comes an extended "analysis of the evidence" without any assignment in connection therewith. And in conclusion the discussion of the demurrer as embodying the main question involved is resumed.

In so far as the demurrer is concerned the appellant overlooks entirely the averment that the checks were honored at the instance and request of defendant. The discussion of the evidence likewise ignores the admission involved in the positive statement of the answer to the effect that the defendant had placed in the hands of the bank a considerable quantity of collateral to secure all overdrafts. The argument as a whole assumed, without any serious attempt to show,

that the same rule governs between drawee and drawer as between drawee and payee. We gather in substance that the relation between a bank and its depositors is that of debtor and creditor; that a bank is under no obligations to honor an overdraft; that the fact of so doing is regarded as reprehensible by some courts and that money thus disbursed can not ordinarily be recovered from the ,payee,—all of which may be conceded without affecting the result in the case at bar.

Nevertheless, the brief on its face is a rather formidable document with copious citations of authority, and appellee in reply appeared to rely upon the proposition that the appeal should be dismissed by reason of the defects in form already referred to rather than upon the merits of the case as made by the bank.

In the circumstances, and especially in view of the fact that the suggestion of a dismissal was made in the brief for appellee filed a few days before the hearing instead of being presented in a timely motion to dismiss, and notwithstanding the fact that this court is under no obligation either to read a brief such as that filed by appellant herein nor to examine the record, we have preferred to postpone the final disposition of the instant case until we could find time to satisfy ourselves that no serious injustice had been done defendant.

Having arrived at the conclusion that no fundamental error was committed, the judgment appealed from will be affirmed.